**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
EAST END VENTURES, LLC,
EAST END VENTURES, II, LLC, and
EAST END VENTURES, III, LLC,

                          Plaintiffs,

             - against -

THE INCORPORATED VILLAGE OF SAG
HARBOR, BOARD OF TRUSTEES OF SAG
HARBOR, PLANNING BOARD OF SAG
HARBOR and VILLAGE OF SAG HARBOR
ZONING BOARD OF APPEALS,

                          Defendants.
--------------------------------------------------------X

**ORDER**

CV 09-3967 (LDW) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.    PRELIMINARY STATEMENT

This case arises out of the Village of Sag Harbor's (the "Village" or "Defendants")[1]

application of an amended zoning code to a condominium project developed by East End

Ventures, LLC, East End Ventures, II, LLC, and East End Ventures III, LLC (collectively,

"Plaintiffs").  Plaintiffs claim that the Village abridged their rights to Equal Protection

guaranteed by the United States Constitution in violation of 42 U.S.C. § 1983 by selectively

enforcing the amended zoning code against them and not against a similar project (the "Bulova"

project).

Plaintiffs seek to compel the deposition testimony of certain of the Defendants'

representatives who refuse to answer questions on the basis of the "so-called legislative (or

---

[1]     Plaintiffs named several Village entities as Defendants in the Amended Complaint: The
Incorporated Village of Sag Harbor, Board of Trustees of Sag Harbor, Planning Board Sag
Harbor, and Village of Sag Harbor Zoning Board of Appeals.

deliberative) privilege." DE 37 at 1.  Plaintiffs argue that they merely seek factual disclosures which are not covered by the privilege or, alternatively, that the Defendants waived the privilege based upon the participation of outside consultants in the relevant discussions.  Defendants' maintain that the deliberative process privilege is inapplicable here, but that the legislative privilege shields the testimony from discovery.  Defendants also assert that the privilege was not waived by the presence of outside consultants.  For the reasons set forth below, Plaintiffs' motion to compel is GRANTED.

## II.    Background

On June 7, 2011, Plaintiffs deposed Tiffany Scarlato, former Village of Sag Harbor trustee.[2]  Ms. Scarlato invoked the legislative privilege in response to several questions posed by Plaintiffs' counsel.  After the deposition, Plaintiffs advised the Court that an issue had arisen at the deposition regarding Ms. Scarlato's invocation of the "legislative privilege."  A status conference was held on June 29, 2011 during which the parties discussed this issue and the Court provided guidance regarding case law governing the "deliberative process" privilege.  *See* DE 29. Counsel for Defendants stated that the assertion of such privilege was likely to come up in connection with at least two other scheduled depositions.  In accordance with the scheduling order set at the conference, Plaintiffs submitted a letter brief discussing the "so-called legislative (or deliberative)" privilege and seeking "rulings on specific questions [and] guidelines for going

---

[2]      A transcript of the Scarlato deposition ("Scarlato Tr.") is attached to Plaintiffs' moving papers [DE 37] as Exhibit 2.

forward." DE 37 at 1.[3]  Defendants' response stated that Ms. Scarlato never invoked the

"deliberative process" privilege and focused on the "legislative privilege."  DE 45 at 1-2.

Although the parties identify several questions that Ms. Scarlato refused to answer on the

grounds of legislative privilege, it is unclear for which questions Plaintiffs seek a ruling.

According to Defendants, Ms. Scarlato invoked the legislative privilege in response to the

following questions:

(1)     What were your objectives in seeking a review of the existing code?

(2)     What was the purpose of the moratorium?

(3)     Why were other applications not allowed to proceed during this period, during the
        period of the moratorium?

(4)     Why were some applications subjected to the moratorium and others not?

(5)     At the point in time when you were aware that the request was made to East End
        Ventures, did you have an opinion as to whether the new code would apply to the
        East End Ventures application?

(6)     What is the point of allowing an application to proceed under an exant [sic] code,
        under the old code, allowing it to be reviewed, allowing process to be made with
        respect to the application, only to then say that it's subject to a new code? What is
        the point in that?

(7)     Would the various boards in Sag Harbor have East End Ventures present drawings
        and proposals premised upon the old code if it was not going to be subject to the
        old code?  Why would they have them do that?

---

[3]     Plaintiffs also ask the Court to rule on "an ancillary attorney/client privilege issue," i.e.,
whether Anthony Tohill, counsel to certain Defendants, may invoke the legislative or attorney
client privilege at his deposition which has not yet been conducted.  This is a request for an
advisory opinion which the Court will not address at this time.  If this issue arises at a deposition
and the parties are unable to resolve it, counsel may contact the Court by telephone to make an
appropriate application.  The parties are also reminded of my previous offer to have the attorney
depositions conducted at the courthouse in order to ensure my availability should any disputes
arise.  *See* DE 15 ¶ 3.

     (8)      Whose idea was it to have a temporary moratorium?

     (9)      Is it fair to say that the board of trustees never discussed exempting the application from the moratorium?

    (10)     Why were those three projects exempted from the moratorium?

    (11)     Why would that be that you would only subject the projects, the applications under review to the old code during the moratrium?  What's the logic behind that?[4]

*See* DE 45 at 2 n.1.

In addition to some of the questions listed above, Plaintiffs identified an additional question Ms. Scarlato refused to answer on privilege grounds:

(12) Were the East End Ventures project and the Bulova project as configured similar?

*See* DE 37 at 1.

## II.   DISCUSSION

This Order addresses whether the legislative privilege was properly invoked with respect to the twelve questions set forth above.  The Court declines to provide abstract "guidelines for going forward" with respect to Ms. Scarlato or any other Village representative.  The Court's reasoning as to the specific disputed questions set forth above, however, should be of assistance to the parties should this issue arise at future depositions.  Any future assertions of the privilege will be decided on a case by case basis consistent with the rulings made here.

---

[4]      Defendants also claim that Ms. Scarlato invoked the privilege in response to the question: "What does it mean where it says that the board believed applications can be managed under present provision of Chapter 55?"  After reviewing the transcript, the Court concludes that Ms. Scarlato answered this question.  *See* Scarlato Tr. at 21-25.

A.       Legislative Privilege vs. Deliberative Process Privilege

Defendants argue that Plaintiffs' brief improperly focuses on the deliberative process privilege which only protects <u>documents</u> reflecting "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated."  On that basis, Defendants maintain that legislative privilege is inapplicable here. DE 45 at 1-2 (citing *Manzi v. DiCarlo*, 982 F. Supp. 125 (E.D.N.Y. 1997)).   Initially, the Court points out that Plaintiffs actually discussed the "legislative (or deliberative) privilege" and generally relied on the same cases as Defendants for the applicable standard.  DE 37 at 1-2.  In any event, Defendants attempt to distinguish the two privileges fails.

"While some courts have created a distinction between an evidentiary legislative privilege and the deliberative process privilege, commentators have opined that the deliberative process privilege, particularly when applied to document production, is simply one type of legislative privilege."  *Doe 1-36 v. Nebraska,* __ F. Supp. 2d __, No. 8:09CV456 *et al.*, 2011 WL 1480483, at *6 n.4 (D. Neb. April 19, 2011); *c.f., EEOC v. Wash. Suburban Sanitary Comm'n.*, 666 F. Supp. 2d 526, 532 n.3 (D. Md. 2009) ("The deliberative process privilege appears to provide protection for evidence relating to administrative acts, while the legislative privilege provides a similar protection for legislative actions."); *Kay v. City of Ranch Palos Verdes*, No. 02 CV 3922, 2003 WL 25294710, at *9-21 (C.D. Cal. Oct. 10, 2003) (discussing the divergent origin, purpose, and scope of the two privileges).   Indeed, in *ACORN v. County of Nassau,* a case upon which the Defendants rely for the majority of their arguments, the court refers to the "legislative *or* deliberative process privilege."  No. 05-CV-2301, 2009 WL 2923435, at *4 n.3 (emphasis supplied); *see also Rodriguez v. Pataki*, 280 F. Supp. 2d 89, 100 (S.D.N.Y. 2003) ("Whether the

privilege that the legislator-defendants seek to assert is characterized as a legislative or a deliberative process privilege, it is, at best, one which is qualified.").  Moreover, Defendants' suggestion that the deliberative process privilege only applies to documents, not testimony, is unavailing.  *See, e.g. ACORN*, 2009 WL 2923435, at *4 n.3 (refusing to distinguish between privilege as applied to documents and testimony); *In re World Trade Center Disaster Site Litg.*, No. 21 MC 100 *et al.*, 2009 WL 4722250, at *1 (S.D.N.Y. Dec. 9, 2009) (holding that testimony was protected by deliberative process privilege); *Allstate Ins. Co. v. Serio*, Nos. 97 Civ. 0620, 97 Civ. 0023, 1998 WL 477961, at *5 n. 7 (S.D.N.Y. Aug. 13, 1998) (same).

Regardless of the label applied, it is well-settled that there is a privilege that protects legislators from "discovery aimed at delving into their thought processes, motivations, and deliberations regarding the legislation they enacted and of which plaintiffs complain."  *See Searingtown Corp. v. Incorporated Village of North Hills*, 575 F. Supp. 1295, 1298 (E.D.N.Y. 1981).  Because Ms. Scarlato referred to the privilege as a "legislative privilege" at her deposition, I will refer to it as such in this Order.  Cases referring to the protection as the "deliberative process privilege," however, are also applicable.

### B.   APPLICATION OF THE PRIVILEGE

Since this case involves federal claims, federal common law concerning privilege governs this dispute.  *See* Fed. R. Evid. 501.  Testimonial privileges are generally disfavored as they "'contravene the fundamental principal that the public has the right to every man's evidence.'"  *ACORN*, 2007 WL 2815810, at *2 (quoting *Trammel v. U.S.*, 445 U.S. 40, 50 (1980) (internal alteration omitted)).   The burden of justifying application of any privilege falls on the party

seeking to invoke it. *Tankleff v. County of Suffolk*, No. CV 09-1207, 2011 WL 1205148, at \*3 (E.D.N.Y. March. 29, 2011).

There are two requirements for invoking the privilege. First, the information must be "predecisional," meaning that it was prepared in order to assist the government decision maker in arriving at his or her decision. *See Hopkins v. U.S. Dep't of Hous. and Urban Dev.*, 929 F.2d 81, 84 (2d Cir. 1991). Second, the information must be "deliberative," meaning that it is "actually related to the process by which the policies are formulated." *Id.* at 84. "The privilege does not, as a general matter, extend to purely factual material." *Id.* at 85.

The legislative privilege is a qualified privilege and "will only be sustained where the relief sought by the suit would threaten the independence of the legislature." *Searingtown Corp. v. Inc. Vill. of N. Hills*, 575 F. Supp. 1295, 1299 (1981). In determining whether to apply the qualified privilege, courts weigh the following factors:

> (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (4) the role of government in the litigation; and (5) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

*Mr. and Mrs. "B" v. Bd. of Educ. of Syosset Cen. Sch. Dist.*, 35 F. Supp. 2d 224, 229 (E.D.N.Y. 1998) (quoting *In re Franklin Nat'l. Bank Secs. Litig.*, 478 F. Supp. 577, 582 (E.D.N.Y. 1979)). "In balancing these interests, foremost is the interest of the litigants, and ultimately of society, in accurate judicial fact finding." *Id.* at 229 (internal quotations and alteration omitted).

The privilege, however, may be inapplicable where the legislative deliberations are among the central issues in the case. *Conte v. County of Nassau*, No. 06-4746, 2009 WL 13624784, at \*5 (E.D.N.Y. May 15, 2009); *Ebbert v. Nassau County*, No. 05-5445, 2007 WL

7

674725, at *11 (E.D.N.Y. Mar. 5, 2007); *Mr. and Mrs. "B,"* 35 F. Supp. 2d 224 at 230; *see also*

*ACORN*, 2008 WL 708551, at *4 ("When the decision making process is itself at issue,

particularly in a civil rights action, the deliberative process privilege and other privileges

designed to shield that process from public scrutiny may not be raised as a bar against disclosure

of relevant information; it must yield to the overriding public interest in challenging

discrimination.'") (citing *Torres v. City Univ. of New York*, No. 90 Civ. 2278, 1992 WL 380561,

at *8 (S.D.N.Y. Dec. 3, 1992)); *Children First Found., Inc. v. Martinez,* No. 04-0927, 2007 WL

4344915, at *7 (N.D.N.Y. Dec. 10, 2007) (holding that the privilege only protects the

government's deliberative process from inquiry if it is collateral to the litigation).  Government

information is "protected from discovery so that the public will benefit from more effective

government; when the public's interest in effective government would be furthered by disclosure,

the justification for the privilege is attenuated.  Thus, [when the information] sought may shed

light on alleged government malfeasance, the privilege is denied."  *In re Franklin Nat'l Bank

Secs. Litig.*, 478 F. Supp. at 582.

   Because the subject matter on which Plaintiffs seek testimony is one of the central issues

in this case, the legislative privilege is inapplicable.  As noted in *Children First Foundation*, the

"historical and overwhelming consensus and body of law within the Second Circuit is that when

the decision-making process itself is the subject of the litigation, the deliberative process

privilege cannot be a bar to discovery."  2007 WL 4344915, at *7 (collecting cases and holding

that privilege was inapplicable to case involving allegations that government defendants acted in

an arbitrary manner in rendering a policy decision).  For example, in *New York v. Salazar*, the

court held that the privilege was inapplicable because the central theme of many of plaintiffs'

claims was that the "deliberative process itself was fatally flawed and infected by arbitrary conduct and abuse of discretion, thereby depriving them of due process." 701 F. Supp. 2d 224, 237-38 (E.D.N.Y. 2010). Similarly, in *Azon v. Long Island R.R.*, the court held that the privilege was inapplicable to documents that contained information critical to the plaintiff's employment discrimination claim. No. 00 CIV 6031, 2001 WL 1658219, at *3 (Dec. 26, 2001); *see also Mitchell v. Fishbein*, 227 F.R.D. 239, 250 (S.D.N.Y. 2005) (collecting cases).

Here, a central issue in Plaintiffs' case is the allegation that Defendants acted arbitrarily and in bad faith in applying an amended zoning code and moratorium to Plaintiffs' project, but not to a similar project. Indeed, in order to succeed on their "class of one" Equal Protection claim, Plaintiffs must prove that they were intentionally treated differently from others similarly situated and that there was no rational basis for the treatment. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The questions Plaintiffs posed to Ms. Scarlato all sought to ascertain the reasons for the manner in which Defendants treated Plaintiffs' project as compared to their treatment of the allegedly similar Bulova project. This area of inquiry goes to the core of Plaintiffs' Equal Protection claim and the legislative privilege does not shield Defendants from offering testimony on this subject.

The Court is aware that this case involves facts similar to the *ACORN* case and in the *ACORN* decisions cited by Defendants, 2009 WL 2923435, and 2007 WL 2815810, Judge Bianco affirmed Judge Wall's order holding that the legislative privilege applies. In those decisions, however, the Court did not address the exception to the privilege for information that is a central issue to the case. Moreover, Judge Bianco did not deny plaintiffs complete access to the documents they sought, but rather ordered the defendant to submit the contested documents

9

to Judge Wall for an *in camera* review and directed that "any of the withheld documents [which] reveal that racial considerations played any role in the legislative deliberations regarding the zoning decision . . . must be produced." 2009 WL 2923435, at *5. This Court's determination is consistent with Judge Bianco's findings. In particular, although Judge Bianco held that the privilege applied, he also found that the legislative privilege did not shield from disclosure the documents which pertained to a central issue in the plaintiff's case – whether the zoning decision was discriminatory. In addition, Defendants fail to discuss the 2008 decision issued by Judge Wall in which the court held that "'the privilege may be inapplicable where the agency's deliberations are among the central issues in the case.'" 2008 WL 708551, at *4 (citing *Mr. & Mrs. B*, 35 F. Supp. 2d at 230).

There is some disagreement as to whether courts should apply the five factor balancing test before requiring disclosure in cases such as this where the information sought is a central issue. *Compare Salazar*, 701 F. Supp. 2d 237 at n.9 *with In re Delphi Corp.*, __ F.R.D. __, No. 08 Civ. 4487, 2011 WL 1533146, at *3 n.1 (S.D.N.Y. April. 19, 2011). Both approaches tend to yield the same result. In cases where the information is a central issue, the need for the documents will likely outweigh any negative consequences of disclosure. *See In re Delphi Corp.*, 2011 WL 1533146, at *3. Because the information Plaintiffs seek goes to the heart of their claim and because Defendants have not satisfied their burden to demonstrate that other factors outweigh this compelling need, a balancing of the factors would also require disclosure.[5]

---

[5]      The Court also has doubt whether Ms. Scarlato, who is no longer a member of the Board of Trustees of Sag Harbor, *see* Scarlato Tr. at 9, can even invoke the privilege on behalf of the Village. *See Conte*, 2009 WL 13624784, at *5-6 (holding that privilege may only be claimed by an agency head and asserted through a declaration setting forth the precise and certain reasons for the need for confidentiality); *Kaufman v. City of New York*, No. 98 CIV 2648, 1999 WL 239698,

Finding the legislative privilege inapplicable, the Court need not address Plaintiffs' arguments regarding the factual nature of the information sought nor the issue of waiver.

Defendants' concerns may be alleviated to some extent by a confidentiality order.  The parties are free to stipulate to confidentiality provisions to govern future depositions and to submit an agreement to the Court to be "So Ordered."

## III.   CONCLUSION

Plaintiffs' motion to compel the deposition testimony of Ms. Scarlato in response to the questions set forth above is GRANTED.

**SO ORDERED.**

Dated: Central Islip, New York
       December 19, 2011

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge

---

at *4-5 (S.D.N.Y. April 22, 1999) (same); *LCN Invs., Inc. v. Rep. of Nicaragua*, No. 96 Civ. 6360, 1997 WL 729106, at *2 (S.D.N.Y. Nov. 21, 1997) (same).